UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LLEWELYN M. KNIGHT,

                    Plaintiff,

         v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                  Defendant.
_____

**DECISION AND
ORDER**

09-CV-525
(VEB)

## I. INTRODUCTION

In February of 2007, Plaintiff Llewelyn M. Knight applied for disability insurance benefits ("DIB") under the Social Security Act.  Plaintiff alleges that he has been unable to work since August of 2006 due to herniated and bulging discs and cervical spondylosis. The Commissioner of Social Security denied Plaintiff's application.

Plaintiff, by and through his attorneys, Olinsky and Shurtliff, Jaya A. Shurtliff, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties, by and through their respective counsel, consented to the jurisdiction of a United States Magistrate Judge on November 28, 2011. (Docket No. 21).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

On February 20 2007, Plaintiff applied for DIB, alleging that he had been unable to

work since July 1, 2006. (T at 12, 50, 117).[1]   The Commissioner initially denied the application and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held in Syracuse, New York, on October 2, 2008, before ALJ Michael W. Devlin.  (T at 26). Plaintiff appeared with an attorney and testified. (T at 26-49). During the hearing, Plaintiff amended his alleged onset date to August 9, 2006.  (T at 28-29).

On November 19, 2008, ALJ Devlin issued a written decision finding that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period and denying Plaintiff's claim for benefits.  (T at 12-23).  The ALJ's decision became the Commissioner's final decision on March 27, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 1-3).

Plaintiff, by and through his attorney, timely commenced this action by filing a Complaint on May 6, 2009. (Docket No. 1).   The Commissioner interposed an Answer on October 23, 2009.  (Docket No. 9).  Plaintiff filed a supporting Brief on December 7, 2009. (Docket No. 11).   The Commissioner filed a Brief in opposition on February 4, 2010. (Docket No. 16).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons set forth below, Plaintiff's motion is denied, the Commissioner's

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 10).

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

motion is granted, and this case is dismissed.

# III. DISCUSSION

## A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the

court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

   **1.    Commissioner's Decision**

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2011.  The ALJ found that Plaintiff had not engaged in substantial gainful activity since August 9, 2006, the amended alleged onset date. (T at 14).

The ALJ found that Plaintiff had the following impairment considered "severe" under the applicable Social Security Regulations (the "Regulations"): "low back (herniated/bulging discs L3, L4, and L5) and neck (cervical spondylosis) [pain]." (T at 14).  However, the ALJ determined that Plaintiff's medically determinable impairments did not meet or equal one of the impairments listed in Appendix I of the Regulations (the "Listings"). (T at 19).

After reviewing the medical evidence, the ALJ concluded that Plaintiff retained the residual functional capacity to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567 (a) (T at 19-22).  The ALJ found that Plaintiff was unable to perform his

past relevant work as a machine operator or apple picker. (T at 22).

Considering Plaintiff's residual functional capacity, age (42 years old on the alleged onset date), education (limited, illiterate), and work experience, the ALJ determined that Plaintiff was able to perform jobs that exist in significant numbers in the national economy. (T at 22). Accordingly, the ALJ concluded that Plaintiff had not been under a "disability," as that term is defined under the Act, from the application date (July 1, 2006) through the date of the ALJ's decision (November 19, 2008), and was therefore not entitled to benefits. (T at 23). As noted above, the ALJ's decision became the Commissioner's final decision on March 27, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 1-3).

**2.      Plaintiff's Claims**

Plaintiff argues that the Commissioner's decision should be reversed. He offers five (5) principal arguments in support of his position. First, Plaintiff argues that the ALJ should have determined that Plaintiff's impairments met or medically equaled the impairment set forth at § 1.04 of the Listings. Second, Plaintiff challenges the ALJ's residual functional capacity determination. Third, Plaintiff contends that the ALJ should have consulted a vocational expert. Fourth, Plaintiff challenges the ALJ's credibility determination. Fifth, Plaintiff argues that the ALJ did not properly evaluate the assessment of an independent medical examiner. Each argument will be addressed in turn.

**a.      Section 1.04 of the Listings**

Impairments listed in Appendix 1 of the Social Security Regulations are

"acknowledged by the [Commissioner] to be of sufficient severity to preclude" substantial gainful activity. Accordingly, a claimant who meets or equals a Listing is "conclusively presumed to be disabled and entitled to benefits." Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir.1995); see 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.").

The claimant bears the burden of establishing that his or her impairments match a Listing or are equal in severity to a Listing. See Naegele v. Barnhart, 433 F. Supp.2d 319, 324 (W.D.N.Y. 2006) ("It must be remembered that plaintiff has the burden of proof at step 3 that she meets the Listing requirements.").

To show that an impairment matches a Listing, the claimant must show that his or her impairments meet all of the specified criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990); 20 C.F.R. § 416.925(d). If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. Sullivan, 493 U.S. at 530. To satisfy this burden the claimant must offer medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.926(b). Abnormal physical findings "must be shown to persist on repeated examinations despite therapy." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B). Further, the medical reports must indicate physical limitations based upon actual observations and/or clinical tests, rather than the claimant's subjective complaints. Id.

Section 1.04 of the Listings (Disorders of the spine) requires "compromise of a nerve root (including the cauda equina) or the spinal cord" with one or more of the following: (a)

7

"[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);" (b) "[s]pinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;" or (c) "[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively."  20 C.F.R. Part 404, Subpart P, Appendix 1, §1.04.

In the present case, the ALJ considered Section 1.04 and determined (without detailed explanation) that Plaintiff's impairments did not, singly or in combination, meet or medically equal the requirements of that Listing. (T at 19). Plaintiff challenges this conclusion, arguing that his impairments meet or medically equal Section 1.04 and, in particular, subparagraph (a) of that Listing.  The Commissioner concedes that the record contains evidence of nerve root compression and limitation of motion of the spine, which are threshold requirements for satisfying the Listing. (Docket No. 16, at p. 7).  Thus, the issue turns on whether substantial evidence supports the ALJ's (implicit) finding that Plaintiff had not established that he suffered from motor loss accompanied by sensory or reflex loss and positive straight-leg raising test (sitting and supine).

The record contains several instances of positive straight-leg raising tests (T at 203,

217, 227-31, 233, 236, 245, 248, 250, 267, 317, 355, 385, 387, 390, 399, 403, 432, 448, 504-05, 507, 566, 584, 659, 665, 665, 678, 684, 688, 723, 753), but also contains numerous indications of negative tests. (T at 190, 191, 192, 193, 194, 237, 238, 332, 349, 367, 377, 382, 383). The ALJ did not explain why he found that Plaintiff's impairment did not meet or medically equal a listed impairment.  As such, he did not explicitly reconcile the conflict in the record concerning Plaintiff's straight-leg raising tests.  However, even assuming that the ALJ erred in failing to expressly reconcile this conflict, any such error was harmless because Plaintiff needed to establish motor loss to satisfy Listing § 1.04.  In other words, Listing § 1.04 requires evidence of "motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss *and*, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . ."  20 C.F.R. Part 404, Subpart P, Appendix 1, §1.04 (emphasis added).  As such, even if the ALJ should have concluded that the positive straight-leg raising test evidence was sufficient, Plaintiff could not satisfy the Listing unless he *also* produced sufficient evidence of motor loss.  For the reasons set forth below, substantial evidence in the record supports a finding that Plaintiff did not have motor loss.  As such, because motor loss is a required element of the Listing, Plaintiff did not meet his burden, even if the positive straight-leg raising tests are counted in his favor.

Plaintiff points to a single piece of evidence suggesting motor loss -- a treatment note from January of 2006 indicating that "[m]otor strength testing is poor." (T at 201). However, Dr. Goriganti, Plaintiff's treating physician noted on several occasions that "motor strength testing . . . in all groups of muscles in both lower extremities" was normal and "5/5

on a scale of 0-5." (T at 357, 190, 191, 192, 193, 194, 349, 366, 367, 368, 374, 375, 376, 377, 382, 383, 503).  Dr. Goriganti also indicated that a sensory examination of Plaintiff's lower extremities was normal. (T at 357).  Dr. Catney, who examined Plaintiff twice, opined that Plaintiff had "5/5 strength in the lower extremities bilaterally with no gross sensory defect." (T at 325, 332).  Dr. Ganesh, the consultative examiner, found full strength in the lower extremities, "[n]o muscle atrophy evident," and "[n]o motor or sensory deficit noted." (T at 1082).

"Conflicts in evidence . . . are for the Commissioner to resolve. White v. Comm'r of Social Security, No. 06-CV-0564, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008) (citing Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir.1983)).  Where, as here, there are conflicts in the medical evidence, it is the ALJ's decision that controls as factfinder. Id. Where the Commissioner's decision "rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner." Id. (citing Veino v. Barnhart, 312 F.3d at 586).

Although the ALJ did not expressly analyze or resolve the conflicting medical evidence, the medical record contains sufficient evidence, as outlined above, to support the ALJ's conclusion that Plaintiff did not meet his burden of establishing an impairment (or combination of impairments) that meets or medically equals the impairment set forth at § 1.04 of the Listings.  This is particularly so in light of the fact that the substantial weight of the evidence (including findings from a treating physician and consultative examiner) indicated that Plaintiff did not have motor loss accompanied by sensory or reflex loss, which is a prerequisite for satisfying this particular Listing.  As such, this Court finds no reversible

error with regard to this aspect of the ALJ's decision.

      **b.**    **RFC**

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

In the present case, the ALJ determined that Plaintiff retained the RFC to lift/carry 10 pounds occasionally and less than 10 pounds frequently; stand/walk for about 2 hours in an 8-hour work day; and sit about 6 hours in an 8-hour work day; provided he was allowed to change position during reasonable work breaks. (T at 19). As such, the ALJ found that Plaintiff retained the RFC to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567 (a).

Plaintiff challenges the ALJ's determination on two grounds. First, Plaintiff contends that the ALJ did not afford proper weight to the assessment of his treating chiropractor, Dr,

Cunningham.  Second, Plaintiff argues that the ALJ did not adequately develop the medical record with regard to his treating physician, Dr. Goriganti.  In particular, Plaintiff contends that the ALJ should have sought a residual functional capacity assessment from Dr. Goriganti.

Dr. Cunningham opined that Plaintiff was limited to occasionally lifting/carrying up to 10 pounds, but never more than that; could sit for 6 hours in an 8-hour work day and stand/walk for 1 hour in an 8-hour work day.  (T at 1101-02).  He further indicated that Plaintiff could occasionally kneel and climb stairs or ramps; but could never climb ladders or scaffolds, balance, stoop, crouch, or crawl. (T at 1104).   In March of 2007, Dr. Cunningham described Plaintiff as "presently totally disabled." (T at 268).

Plaintiff contends that Dr. Cunningham's assessment and particularly his conclusion that Plaintiff could never stoop and his statement that Plaintiff was "totally disabled," were inconsistent with the ALJ's RFC determination and should have been afforded greater weight.  This Court finds Plaintiff's argument unpersuasive for the following reasons.

First, a chiropractor's opinion is not entitled to any special weight in the social security disability context. A "treating source" is entitled to special weight, but not all treating health care providers are "treating sources" under the applicable Regulations. A "treating source" is defined as the claimant's "own physician, psychologist, or other acceptable medical source who provides [claimant], or has provided [claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]." 20 C.F.R. § 404.1502.  There are five categories of "acceptable medical sources." 20 C.F.R. § 404.1513 (a). Chiropractors are not included among the "acceptable medical

sources" and their opinions are not entitled to any special weight.  Rather, chiropractors are listed among the "other medical sources," whose opinion may be considered as to the severity of the claimant's impairment and ability to work. 20 C.F.R. § 416.913 (d)(1).

Second, there is sufficient evidence in the record to support the ALJ's RFC determination.  As noted above, it is the Commissioner's responsibility to resolve conflicts in the medical evidence.  For example, Dr. Goriganti, Plaintiff's treating physician, opined in May of 2005 that Plaintiff could occasionally lift/carry up to 50 pounds and could repetitively lift up to 20 pounds. (T at 356).  He did not find Plaintiff precluded from all stooping, but indicated that he should avoid "*excessive* bending, stooping, or kneeling." (T at 356)(emphasis added).

Moreover, Dr. Goriganti opined that within certain limits, Plaintiff could "work 5 days per week, 8 hours per day." (T at 356).  In September of 2005, Dr. Goriganti assessed "no limitation in the work activities . . . ." (T at 374).  In December of 2005, Dr. Goriganti again indicated that Plaintiff could lift up to 50 pounds occasionally and should avoid "*continuous* bending, stooping, or kneeling." (T at 378)(emphasis added).

Dr. Schuster, an independent medical examiner, concluded that Plaintiff was limited with regard to bending and long periods of standing, but could lift in the range of 15-20 pounds. (T at 232).  Dr. Ganesh, the consultative examiner, "[n]o gross limitation" with regard to sitting or standing and a "mild to moderate limitation" with respect to lifting, carrying, pushing, and pulling. (T at 1082-83).  It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security

disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Moreover, the disability determination is ultimately reserved to the Commissioner. 20 C.F.R. § 404.1527(e); SSR 96-5p.

This Court likewise finds no error with regard to the ALJ's failure to ask Dr. Goriganti to provide a residual functional capacity assessment.  Although the ALJ has an affirmative duty to develop the record, the ALJ is not required to obtain every conceivable piece of information; the Commissioner's conclusion will be sustained if the record contains sufficient evidence to sustain that conclusion under the applicable standard. Rosa v. Callahan, 168 F.3d 72, 79 n. 5 (2d Cir.1999)("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.")(citations omitted).  Here, the administrative record totals 1,152 pages and includes voluminous treatment notes and records, assessments by consultative examiners and independent medical examiners, and reports from Plaintiff's treating providers, including Dr. Goriganti.  Moreover, as noted above, Dr. Goriganti did opine as to several; aspects of Plaintiff's RFC and those findings were fully supportive of the ALJ's RFC determination.  Accordingly, this Court is persuaded that the ALJ satisfied his obligation to develop the administrative record and there is no reversible error as to this issue.

For the reasons outlined above, this Court finds that the ALJ's RFC determination was supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and must therefore be sustained.

### c.    Consultation with a Vocational Expert

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F. Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

15

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling."  Id. at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

If the claimant has nonexertional impairments, the ALJ must determine whether those impairments "significantly" diminish the claimant's work capacity beyond that caused by his or her exertional limitations. Id.  A claimant's work capacity is "'significantly diminished' if there is an 'additional loss of work capacity . . . that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" Id. (quoting Bapp, 802 F.2d at 606).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

In this case, the ALJ used the Grids in reaching his disability determination. Specifically, the ALJ concluded that a finding of "not disabled" was directed by Medical-Vocational Rule 201.25 based upon Plaintiff's age, education, work experience, and ability

16

to perform the full range of sedentary work. (T at 23).

Plaintiff contends that the ALJ erred because his work capacity is significantly diminished by non-exertional impairments; namely, difficulty stooping, bending, crouching, crawling, and climbing ladders or scaffolds.

This Court finds Plaintiff's argument unpersuasive. The "mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the [Grids]." Bapp v. Bowen, 802 F.2d 601, 603 (2d Cir. 1986).

Although Dr. Cunningham, the treating chiropractor, found that Plaintiff was precluded from performing many of these non-exertional activities; that finding was contradicted by other evidence in the record, as outlined above. For example, Dr. Goriganti, Plaintiff's treating physician, did not find Plaintiff precluded from all stooping, but indicated that he should avoid "*excessive* bending, stooping, or kneeling." (T at 356)(emphasis added).

Moreover, Plaintiff's counsel provides this Court with a somewhat inaccurate quotation from the record in support of this argument. To wit, Plaintiff's counsel asserts that "Dr. Goriganti opined in December of 2005, that Mr. Knight 'should avoid any . . . stooping or kneeling.'"(Docket No. 11, at p. 20). Plaintiff's counsel apparently inadvertently omitted by the use of ellipses the adjective "continuous,"which Dr. Goriganti used (T at 205) to qualify his opinion and which (of course) materially modifies the physician's finding (i.e. making it much less supportive of Plaintiff's argument). Further, in the very same paragraph, Dr. Goriganti stated that, with the limitations he outlined, Plaintiff was capable

17

of full time work at a "moderate duty" level. (T at 205).  And, as noted above, in another assessment, Dr. Goriganti opined that Plaintiff was limited only with respect to *excessive* bending, stooping, or kneeling." (T at 356)(emphasis added). In sum, this Court finds no error with regard to the ALJ's decision to rely on the Grids and his determination that consultation with a vocational expert was not required.

     **d.   Credibility**

     Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F. Supp. 604, 609 (S.D.N.Y.1997).

     However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F. Supp. 1413, 1419 (S.D.N.Y.1995).

     "An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

     To this end, the ALJ must follow a two-step process to evaluate the plaintiff's

contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

> 1. [Plaintiff's] daily activities;
> 2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
> 3. Precipitating and aggravating factors;
> 4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
> 5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
> 6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
> 7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

19

In the present case, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of those symptoms was not credible to the extent they were inconsistent with the ALJ's RFC determination. (T at 21).

This Court finds that the ALJ's assessment of Plaintiff's credibility was supported by substantial evidence and in accord with applicable law.  As outlined above, the ALJ's RFC determination was supported by substantial evidence, including assessments by consultative examiners and reports from Plaintiff's treating providers.  In addition, the ALJ appropriately considered Plaintiff's testimony regarding his activities of daily living. Although Plaintiff did testify to certain limitations (e.g. pain and numbness upon sitting; use of a mobility cart when grocery shopping; drowsiness as a medication side effect), he also indicated that he could carry a gallon of milk, attend church and school, clean dishes, walk up to 20 blocks twice a week, and help care for his two young sons. (T at 42-44).

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Sec'y, Dep't of Health & Human Servs, 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility

assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing Pascariello v. Heckler, 621 F. Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir.1999).

There is no question that Plaintiff, regrettably, must live with pain.  However, "disability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment. Otherwise, eligibility for disability benefits would take on new meaning." Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983).  Moreover, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence [of disability]." 42 U.S.C. § 423(d)(5)(A).

The Court finds that the ALJ properly exercised his discretion to evaluate the credibility of Plaintiff's testimony and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence. See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir.1984).  The ALJ's decision should therefore be upheld.

### e.    Consideration of IME Opinion

In July of 2008, Dr. Wayne Kerness performed an independent medical examination of Plaintiff in connection with his claim for workers' compensation benefits.  Dr. Kerness prepared a report of the examination, dated the same date, in which he identified and repeatedly described Plaintiff as a woman. (T at 1116-20).  Dr. Kerness concluded that Plaintiff could not work and found evidence of a "marked causally related disability." (T at 1119).

21

The ALJ gave "no weight" to Dr. Kerness's opinion.  The only reason offered by the ALJ for dismissing Dr. Kerness's assessment was the fact that the doctor's report misidentified Plaintiff's gender.  (T at 18).  Plaintiff challenges the ALJ's conclusion and argues that the ALJ should have afforded at least some weight to Dr. Kerness's opinion.  This Court finds that the ALJ was too quick to dismiss Dr. Kerness's assessment.  Although the misidentification of Plaintiff's gender in the report is certainly cause to question the thoroughness of Dr. Kerness's proofreading and the care with which the report was prepared; the most likely explanation for the mistake (clerical/transcription error) suggests that it was not, without more, a reason to reject the entire opinion out of hand.  With that said, the ALJ's error was harmless for the following reasons. See Duvergel v. Apfel, No. 99 Civ. 4614, 2000 WL 328593, at *11 (S.D.N.Y. Mar.29, 2002); Walzer v. Chater, 93 Civ. 6240, 1995 WL 791963 at *9 (S.D.N.Y. Sept.26, 1995) (finding that ALJ's failure to discuss a treating physician's report was harmless error where consideration of report would not have changed outcome)

First, Dr. Kerness was not a treating physician and his opinion was not entitled to any special weight.   Second, Dr. Kerness's opinion was rendered in the workers' compensation context, which applies different standards relative to disability determinations than those applied by the Commissioner.  See Rosado v. Shalala, 868 F.Supp. 471, 473 (E.D.N.Y.1994) (citing Coria v. Heckler, 750 F.2d 245, 247 (3d Cir.1984) ("Although plaintiff's doctors had checked off that plaintiff was disabled on forms sent to the Workers' Compensation Board, the standards which regulate workers' compensation relief are different from the requirements which govern the award of disability insurance benefits

22

under the Act. Accordingly, an opinion rendered for purposes of workers' compensation is not binding on the Secretary."); see also Crow v. Comm'r of Soc. Sec., No.01-CV-1579, 2004 WL 1689758, at *3 (N.D.N.Y. July 20, 2004) (the ALJ was not required to adopt a treating physician's opinion that Plaintiff was "totally" disabled, in part, because "the opinions were rendered in the context of [Plaintiff's] W[orkers'] C[ompensation] claim, which is governed by standards different from the disability standards under the Social Security Act").  Third, even if Dr. Kerness's opinion is factored in the analysis, substantial evidence otherwise contained in the record (as outlined above) supports the ALJ's determination, including reports from a consultative examiner and treating providers.  Accordingly, this Court finds no reversible error with regard to the ALJ's consideration of Dr. Kerness's opinion.

## IV. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. The ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including the assessments of Plaintiff's treating providers and the consultative examiners and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering his decision that Plaintiff is not disabled.  In sum, this Court finds no reversible error and because substantial evidence supports the Commissioner's decision, the Commissioner is GRANTED judgment on the pleadings and Plaintiff's motion for judgment on the pleadings is DENIED.

SO ORDERED,

Victor E. Bianchini
United States Magistrate Judge

Dated:   September 11, 2012

Syracuse, New York

## V. ORDERS

The Commissioner's Motion for Judgment on the Pleadings is GRANTED; Plaintiff's Motion for Judgment on the Pleadings is DENIED; the Clerk of the Court shall enter Judgment accordingly and close this case.

SO ORDERED.